**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LANCE HUNDLEY, ) | Case No. 4:24-cv-1565 |
| ) | |
| Petitioner, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | |
| ) | |
| BILL COOL, Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

## OPINION AND ORDER

The Court **DENIES** Petitioner's motion to compel Respondent's position on disqualification (ECF No. 34) because it is unnecessary. Based on its independent research, the Court determines that there is no disqualifying conflict, that Petitioner's counsel is unlikely to be a necessary witness, and that Petitioner's counsel would not be subject to disqualification even if called to testify during an evidentiary hearing (if one is needed) to establish a record for on the issue of equitable tolling.

## BACKGROUND

On February 11, 2025, the Court held a hearing by Zoom to address a possible conflict based on facts contained in a supplement to the record. (ECF No. 31; ECF No. 25.) At the hearing, the Court ordered Respondent to file a notice indicating whether he intended to request disqualification of Petitioner's counsel on the basis of that possible conflict. (ECF No. 31.) If Respondent decided not to seek disqualification, the Court represented that it would notify the parties whether its

independent research led it to require any further action on the issue. (*Id.*, PageID #7243.)

On February 13, 2025, Respondent filed a notice stating "that the Warden will *not* file a motion seeking the disqualification of Counsel for Hundley." (ECF No. 32, PageID #7244.) However, "should this Court schedule a hearing [on the issue of equitable tolling], the Warden intends to call Counsel Wilhelm, Hicks, and Rossman as witnesses." (*Id.*) Currently, Joseph E. Wilhelm, Sharon A. Hicks, and Aaron Shaum represent Petitioner.

On February 19, 2025, Petitioner filed a motion to compel "the Warden's counsel to plainly request the disqualification of Hundley's counsel *if* the Warden's counsel intends to call Joseph E. Wilhelm, Sharon A. Hicks, or Alan Rossman as witnesses." (ECF No. 34, Paged #7249.) If Respondent does not move for disqualification, Petitioner "requests that the Court bar the Warden from calling them as witnesses in any hearings held by the Court." (*Id.*) Petitioner argues that Respondent's intent to call Petitioner's counsel as witnesses may itself raise a question of conflict, which runs the risk of allowing the disqualification issue to arise again later in the proceedings. Petitioner contends that the disqualification issue should be resolved now, before proceedings develop further, in the interest of judicial efficiency and to avoid encumbering potential replacement counsel with partial work done by other attorneys.

## ANALYSIS

"Disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Kala v. Aluminum Smelting & Refining Co., Inc.*, 688 N.E.2d 258, 6, 1998-Ohio-439 (Ohio 1998) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). The Ohio Rules of Professional Conduct govern attorneys admitted to practice in the Northern District of Ohio. L.R. 83.7(a). Accordingly, the Court considers the two primary Ohio Rules of Professional Conduct that appear to be implicated here—Rule 1.7 and Rule 3.7.

### I. Rule 1.7: Conflict of Interest

As relevant here, Rule 1.7 states that there is a conflict of interest where "there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by . . . the lawyer's own personal interests." Ohio Prof. Cond. R. 1.7(a)(2). Based on its discussions with counsel on the record and its review of the record, including email correspondence between Petitioner's federal habeas counsel and Petitioner's State counsel (ECF No. 30), the Court does not see such a risk here. Although Petitioner's State counsel had some contact with lawyers at the Office of the Federal Public Defender who would later assume his representation in this federal habeas proceeding, those lawyers were not Petitioner's counsel at the time. Indeed, the correspondence between counsel makes that clear. Nor could Petitioner's current counsel have previously represented him. At the time, the Court had not appointed them under 18 U.S.C. § 3599.

3

Accordingly, there is no reason to believe that this case "would pit the petitioner's interest in vigorously presenting [an ineffective-assistance-of-counsel] argument against counsel's interest in preserving their professional reputation." *In re Hanna*, 987 F.3d 605, 615 (6th Cir. 2021) (Moore, J., dissenting). Even if one were to assume a lawyer-client relationship arose by operation of law between Petitioner and certain members of the Office of the Federal Public Defender, that fact alone might not prove dispositive. *See id.* at 610 (accepting district court's determination that "members of [the public defender's] office would be perfectly capable of reviewing the prior work of their colleagues for mistakes").) But that question is not before the Court on this record.

## II.   Rule 3.7: Lawyer as Witness

"A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." *Reo v. University Hosps. Health Sys.*, 2019-Ohio-1411, ¶ 52, 131 N.E.3d 986 (Ohio Ct. App. 2019). Instead, Rule 3.7 prohibits a lawyer from acting "as an advocate *at a trial* in which the lawyer is *likely to be a necessary witness*," with three exceptions. Ohio Prof. Cond. R. 3.7(a) (emphasis added). The animating concern underlying the Rule is that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." *Id.*, cmt. 1. Prejudice to the tribunal and the opposing party arises from the risk that "the trier of fact may be confused or misled by a lawyer serving as both advocate and witness." *Id.*, cmt. 2. Specifically, a

4

trier of fact may not understand "whether a statement by an advocate-witness should be taken as proof or as analysis of the proof." *Id.*

The record does not implicate the policies behind Rule 3.7. First, any testimony that might be required from Petitioner's counsel would arise in the context of an evidentiary hearing before the Court, not at a jury trial, in which there is no real risk of confusion regarding the testifying lawyer's role as witness and advocate. "The rule does not address whether a lawyer may act as an advocate at a motion hearing in which he is likely to be called as a necessary witness." *Akron v. Carter*, 2010-Ohio-5462, ¶ 21, 942 N.E.2d 409 (Ohio Ct. App. 2010).

Second, as explained above, the Court does not detect a conflict between Petitioner and his federal habeas counsel on the basis of their limited contact with Petitioner's State counsel. Respondent purports to reserve the right to call opposing counsel at any evidentiary hearing on the issue of equitable tolling that might occur. Based on the record as it stands today, however, the Court doubts that the lawyers in question would be "necessary witnesses." "A necessary witness under [Rule 3.7] is one whose testimony is unobtainable through other trial witnesses. Testimony may be relevant and even highly useful but still not strictly necessary." *Reo*, 2019-Ohio-1411, at ¶ 52 (citations omitted). Between testimony from Petitioner's State counsel, other witnesses, and the documentary record, the Court cannot say Petitioner's current counsel is "likely to be a necessary witness."

5

Even if one of Petitioner's lawyers were to become a necessary witness at an evidentiary hearing, the exception described in Rule 3.7(a)(3) would apply. It creates an exception to the general rule that a lawyer may not serve as a witness where "the disqualification of the lawyer would work *substantial* hardship on the client." Ohio Prof. Cond. R. 3.7(a)(3) (emphasis in original). The Court finds that the disqualification of Petitioner's counsel would work substantial hardship on him. As a general matter, disqualification of counsel "serves to destroy a[n attorney-client] relationship by depriving a party of representation of their own choosing." *Kala*, 688 N.E.2d at 6 (quoting *Freeman*, 689 F.2d at 721). These costs are particularly acute here, where Petitioner's counsel has worked with him for some time and have diligently and carefully built up a relationship of trust with him under difficult circumstances. Mr. Hundley met with lawyers from the Office of the Federal Public Defender in July 2024, but he did not agree to let them represent him until September 2024. (ECF No. 2, PageID #9.) In the interim, Mr. Hundley filed a *pro se* motion requesting an execution date. (*Id.*; ECF No. 8-4.) Evidently, his lawyers were able to develop a relationship of trust and confidence with him and convince him otherwise. In the event of disqualification, Mr. Hundley would be unlikely to develop a similar relationship with other counsel—and certainly in any amount of time that would allow these proceedings to advance in a reasonably timely or efficient manner. Accordingly, there would be substantial prejudice to him *and* to Respondent from disqualification.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's motion to compel and **ORDERS** the parties to proceed according to the schedule previously set for addressing whether any additional evidence or information is necessary to develop a record on equitable tolling. (*See* ECF No. 24.) Specifically, Petitioner shall file a motion by March 14, 2025 directed at creating a sufficient record for adjudication of the threshold issue of equitable tolling, Respondent is to respond by April 14, 2025, and any reply from Petitioner is due 14 days after Respondent's brief.

**SO ORDERED.**

Dated: February 22, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio