# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LANCE HUNDLEY, | ) | Case No. 4:24-cv-1565 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM COOL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION AND ORDER

Petitioner Lance Hundley moves to expand the evidentiary record on the issue of equitable tolling through discovery and an evidentiary hearing. For the following reasons, the Court **GRANTS** the motion.

## BACKGROUND

At a trial in State court in 2016, a jury convicted Petitioner Lance Hundley of aggravated murder with prior calculation and design, attempted murder, felonious assault, and aggravated arson. *State v. Hundley*, 162 Ohio St. 3d 509, 2020-Ohio-3775, 166 N.E.3d 1066, ¶ 54. The charge of aggravated murder included a death-penalty specification. *Id.* On that count, the jury unanimously recommended a sentence of death, and the State trial court accepted the recommendation and imposed a death sentence. *Id.* at ¶ 57. Petitioner pursued a direct appeal through the State court system and to the United States Supreme Court, which denied his petition for a writ of certiorari on February 22, 2021. (ECF No. 14-2, PageID#1857.)

That denial commenced the running of the one-year limitations period for Petitioner to file a petition for a writ of habeas corpus in federal court.  28 U.S.C. § 2244(d)(1)(A).  But he did not do so before February 22, 2022.

### A.     Commencement of Habeas Proceedings

On September 13, 2024, Petitioner filed a notice of intent to file a habeas petition (ECF No. 1) and moved for appointment of counsel (ECF No. 2) in federal court.  After the Court granted Petitioner's motion and appointed counsel from the Office of the Federal Public Defender, Petitioner moved for his federal counsel to participate in State court litigation, and Respondent opposed.  (ECF No. 8; ECF No. 12.)  After a hearing on the motion, the Court granted the motion in part and denied it in part.  (ECF No. 13.)  Specifically, the Court authorized Petitioner's counsel to seek withdrawal of his *pro se* motion at the Ohio Supreme Court, which sought to waive appeals and schedule an execution date.  (*Id.*)  The Court declined to authorize participation in other State court proceedings, such as an application to reopen appeal.  (*Id.*)

On December 6, 2024, Petitioner filed his habeas petition.  (ECF No. 19.)  To excuse the petition's untimeliness, Petitioner invoked the doctrine of equitable tolling based on misconduct on the part of his counsel in State court.  (*Id.*, ¶ 6, PageID #7035–36.)  With his petition, Petitioner filed a motion for leave to amend his petition on or before June 6, 2025.  (ECF No. 20.)  Respondent opposed the motion.  (ECF No. 21.)  After a hearing on the motion, the Court denied it without prejudice, ordered Respondent to supplement the record with evidence relevant to the threshold issue of equitable tolling, and set a briefing schedule for a motion from Petitioner directed

2

at identifying any additional evidence or other materials necessary for adjudication of the equitable tolling issue.  (ECF No. 24.)

### B.    Pre-Filing Involvement of Counsel

On January 23, 2025, Respondent supplemented the record with an affidavit from an attorney who served as Petitioner's counsel on direct appeal and in post-conviction proceedings in State court.  (ECF No. 25-1, PageID #7129.)  In that affidavit, counsel attested to discussing certain post-conviction issues with the Office of the Federal Public Defender.  (*Id.*, ¶¶ 7–11, PageID #7129–30.)  Out of an abundance of caution, the Court scheduled a status conference to discuss whether any prior involvement by that Office created a conflict or otherwise affected the schedule previously set for addressing the threshold issue of equitable tolling.  (ECF No. 26.)  The record made in connection with that conference showed that Mr. Hundley's counsel in State court first contacted the Office of the Public Defender after the deadline for his post-conviction petition in State court but before the federal habeas deadline.  (ECF No. 30-1, PageID #7147.)

After discussion with counsel, the Court ordered Respondent to file a notice indicating whether he intended to seek disqualification of Petitioner's habeas counsel. (ECF No. 31.)  If so, the Court indicated that it would suspend the previous briefing schedule and set a briefing schedule on the issue of disqualification.  (*Id.*)  If Respondent did not so intend, the Court indicated that it would provide notice to the parties whether its independent research led it to require briefing or other proceedings regarding the potential conflict.  (*Id.*)

3

Respondent filed a notice stating that he "will *not* file a motion seeking the disqualification of [Petitioner's counsel]." (ECF No. 32, PageID #7244.) However, should the Court hold an evidentiary hearing regarding equitable tolling, Respondent "intends to call [Petitioner's counsel] as witnesses." (*Id*.) In response, Petitioner moved to compel the warden's position on disqualification of counsel. (ECF No. 34.) Arguing that Respondent's "stated intent to call [counsel] as witnesses itself raises the specter of a conflict," Petitioner requested the Court to order Respondent to file a disqualification motion if he intended to call counsel as witnesses, or, if he did not so intend, to bar Respondent from calling counsel as witnesses in any hearing. (*Id*., PageID #7252.)

On February 22, 2025, the Court denied Petitioner's motion on the ground that it was unnecessary. (ECF No. 35.) Based on its independent research, the Court determined that there was no disqualifying conflict based on the record presented, Petitioner's counsel were unlikely to be necessary witnesses within the meaning of Rule 3.7, and Petitioner's counsel would not be subject to disqualification even if called to testify during a potential evidentiary hearing. (*Id*., PageID #7254.) In concluding that there was no disqualifying conflict, the Court found that, "[a]lthough Petitioner's State counsel had some contact with lawyers at the Office of the Federal Public Defender who would later assume his representation in this federal habeas proceeding, those lawyers were not Petitioner's counsel at the time[, as] the correspondence between counsel ma[de] clear." (*Id*., PageID #7256.) Indeed,

Petitioner's habeas counsel could not have represented him previously—at the time, the Court had not appointed them.  (*Id*.)

With the potential disqualification issue behind the parties, the Court directed them to proceed according to the schedule previously set for addressing whether additional evidence was necessary to develop a sufficient record to decide the issue of equitable tolling. (*Id*., PageID#7260.)  Petitioner moves for discovery, an evidentiary hearing, and expansion of the record to support the adjudication of equitable tolling (ECF No. 37), which Respondent opposes (ECF No. 40; ECF No. 41).  Petitioner seeks discovery under Habeas Rule 6, an evidentiary hearing under Habeas Rule 8, and expansion of the record under Habeas Rule 7.

## LEGAL STANDARD

A habeas petitioner is "not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  However, under Habeas Rule 6(a), the Court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Good cause exists "where specific allegations before the court show reason to be believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he . . . is entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (alteration in original).

Habeas Rule 7 authorizes the Court to "direct the parties to expand the record by submitting additional materials relating to the petition," including "letters predating the filing of the petition, documents, exhibits, [ ] answers under oath to

5

written interrogatories propounded by the judge, [and a]ffidavits." Petitioner seeks to enter any facts developed in discovery and transcripts from any evidentiary hearings as an expansion of the record under Habeas Rule 7.

Habeas Rule 8(a) mandates the Court to "determine whether an evidentiary hearing is warranted" after reviewing "the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7." The standard for the determination is similar to that under Habeas Rule 6—"whether such a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Although equitable tolling does not constitute relief on the merits, courts use the same inquiry to evaluate whether to hold an evidentiary hearing on a motion for equitable tolling. *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). In other words, "an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling." *Id*. At this stage, a court does not require Petitioner's allegations to be supported by evidence—after all, the absence of evidence motivates the motion in the first place. Instead, the court asks only whether his allegations "are not so conclusory as to be disregarded" and whether they are consistent with the record from State court. *Id*. at 743, 744 (citing *Schriro*, 550 U.S. at 474). Accepting as true any allegations satisfying those two requirements, the court considers whether those facts would entitle him to equitable tolling. *Id*. at 742.

6

## ANALYSIS

Ordinarily, the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act would bar Petitioner's federal habeas petition as untimely. 28 U.S.C. 2244(d)(1). However, "AEDPA's one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances." *Ata*, 662 F.3d at 741 (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). To benefit from equitable tolling, a petitioner bears the burden of showing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 653 (cleaned up). In *Holland*, the Supreme Court considered diligent a petitioner who wrote his attorney numerous letters, contacted various authorities seeking the removal of the attorney, and prepared a habeas petition *pro se* the very day he discovered that his limitations period had expired. *Id.* By contrast, a petitioner who waits nearly six years to seek relief "falls far short" of the diligence he needed to demonstrate. *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013).

Extraordinary circumstances might exist where "serious instances of attorney misconduct" caused the filing delay. *Holland*, 560 U.S. at 652. A "garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Id.* at 651–52 (quotations

omitted).   However, "egregious cases involving an attorney's failure to satisfy professional standards of care may constitute extraordinary circumstances." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

## I.    Petitioner's Allegations

Against the backdrop of this standard, Petitioner details the facts and circumstances he intends to develop through discovery to attempt to make out a claim for equitable tolling.  (ECF No. 37, PageID #7282–92.)

### I.A.    Petitioner's Claims About His Representation in State Court

Two attorneys represented Petitioner on direct appeal and in post-conviction proceedings in State court.  Petitioner alleges that they never discussed any strategy with him, sought his input on filings, or communicated with him regarding his case other than mailing copies of filings to him once counsel had already filed them.  (*Id.*, PageID #7283.)  When Petitioner requested a copy of his trial transcripts, his State counsel sent them in a format that made it impossible for Petitioner to review them. (*Id.*)  Petitioner alleges that his calls were almost always unanswered and that his letters were always unanswered.  (*Id.*)  At times, Petitioner attempted to reach his State counsel through three-way calls facilitated by a third party.  (*Id.*, PageID #7284.)  Sometimes Petitioner's State counsel did not answer these calls; at other times, they answered but then declined to speak with Petitioner, promising to call him back but never doing so.  (*Id.*)  Additionally, Petitioner alleges that State counsel encouraged him to discuss his case using non-privileged and non-confidential electronic communication methods.  (*Id.*, PageID #7285.)

8

Petitioner alleges that his State counsel only met with him twice during the six years of their representation—once over a video call in late 2020 and once at an in-person visit in February 2024. (*Id.*, PageID #7283.)  In October 2020, upon learning that the same attorneys had been appointed for post-conviction proceedings and to file a petition for a writ of certiorari in his direct appeal, Petitioner filed a *pro se* motion with the trial court seeking the appointment of new counsel. (ECF No. 14-2, PageID #2075–77.)  Petitioner alleges that he did so because of the attorneys' previous communication failures and because he had learned from other death row inmates that he should have different representation in post-conviction proceedings. (ECF No. 37, PageID #7287.)

Shortly thereafter, State counsel set up a video call to speak with Petitioner regarding his motion, which was the first time State counsel spoke with Mr. Hundley about the substance of his case. (*Id.*, PageID #7288.)  During the call, State counsel told Petitioner that he would not get new attorneys and that the trial court would side with them over him. (*Id.*)  Petitioner alleges that his State counsel did not inform him that the statute of limitations had expired for his post-conviction petition and instead told him, erroneously, that the trial court had equitably tolled the post-conviction statute of limitations, which it had not. (*Id.*)  Nor did they inform him of his right to file an application to reopen his direct appeal. (*Id.*)  Following the call, State counsel continued to avoid communication with Petitioner and, in addition, stopped mailing him copies of filings in his case. (*Id.*, PageID #7288–89.)

Even though the State post-conviction petition was already more than two years late at the time of the 2020 call, Petitioner's State counsel did not file it until September 29, 2021.  (ECF No. 14-2, PageID #2079–101.)  The State moved for judgment on the pleadings, arguing that the petition was untimely.  (*Id.*, PageID #2157 & #2191.)  Petitioner's counsel filed no response.  (ECF No. 37, PageID #7289.)  When the court found his post-conviction petition untimely, Petitioner was unaware because his State counsel had stopped sending him copies of filings and docket entries.  (*Id.*, PageID #7295.)

Petitioner alleges that one of his two attorneys visited him in person for the first time in February 2024 after he sent a letter to the trial court asking to waive his appeals and set an execution date.  (*Id.*, PageID #7290.)  At first, his State counsel told Petitioner that he would file a motion to that effect.  (*Id.*, PageID #7291.)  But he did not do so. (*Id.*)  Nor did he communicate with Petitioner regarding the issue after that first visit, which was also the last.  (*Id.*)  Petitioner alleges that his State counsel would not accept his calls and that later, on a three-way call mediated by his friend, State counsel said that he could not waive the appeals but that the Federal Public Defender's Office could do so in the future.  (*Id.*)  Petitioner's State counsel did not mention that federal counsel could only obtain authorization to represent clients in State court proceedings that are necessary or related to litigating the federal habeas petition.  (*Id.*)

State counsel continued to represent Petitioner until the Ohio Supreme Court declined to accept jurisdiction of his appeal on July 9, 2024.  (ECF No. 8-3, PageID

#34.)  On July 27, 2024, Petitioner met with attorneys from the Office of the Federal Public Defender.  (ECF No. 2, PageID #9.)  On September 4, 2024, he agreed to let them represent him in federal habeas proceedings.  (*Id.*)  On September 13, 2025, attorneys from the Office of the Federal Public Defender filed a notice of intent to file his federal habeas petition (ECF No. 1) and moved for appointment (ECF No. 2); the Court appointed them as counsel that same day (ECF No. 5).

Petitioner argues that State counsel's conduct violated a host of professional standards, citing the Ohio Rules of Professional Conduct and American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases that address client consultation and communication as well as familiarity with and preservation of issues under the rules of federal habeas review. (ECF No. 37, PageID #7276–77 & #7279–82.)  Also, Petitioner requests the opportunity to present evidence that attorneys certified to accept capital appointments in Ohio receive training and guidance regarding these standards of practice.  (*Id.*, PageID #7277–78.)  He asserts that his State counsel's silence and, at times, active misdirection regarding deadlines in his case made it impossible to understand or timely pursue his rights.  Further, he alleges that he acted with reasonable diligence in his attempts to remove his State counsel and that his eventual request to waive his appeals was motivated by hopelessness exacerbated by his State counsel's behavior.  Petitioner argues that his allegations present an account of abandonment or at least severe attorney misconduct that justifies equitable tolling.

11

### I.B.    Respondent's Resistance of Discovery

Respondent does not contend that Petitioner's allegations are too conclusory or that the State-court record refutes them.   Nor does Respondent dispute that Petitioner alleges extensive violations of professional standards on the part of his State counsel.  Indeed, Respondent does not contest that these violations, if proved, constitute extraordinary instances of egregious attorney misconduct.   Instead, Respondent makes three arguments in opposition:  (1) regardless of State counsel's conduct, attorneys from the Federal Public Defender's Office are responsible for the petition's untimeliness; (2) Petitioner's discovery requests are overbroad in light of the irrelevancy of State counsel's conduct; and (3) the files of Petitioner's current counsel are now subject to *in camera* review because he has implicitly waived attorney-client privilege over them by putting attorney conduct into dispute.

The same premise underpins each argument—Respondent's contention that attorneys from the Federal Public Defender's Office acted as Petitioner's "agents" before their appointment as his federal habeas counsel and were responsible for the untimely filing of his petition. (*See* ECF No. 40, PageID #7327; ECF No. 41-1, PageID #7337.)  Therefore, Respondent maintains, Petitioner cannot prevail on a claim of attorney misconduct as a basis for equitable tolling unless he attacks the conduct of his present counsel in addition to that of his State counsel.  But the Court already considered and rejected this premise in its ruling on disqualification.  "Although Petitioner's State counsel had some contact with lawyers at the Office of the Federal Public Defender who would later assume his representation in this federal habeas

12

proceeding, those lawyers were not Petitioner's counsel at the time." (ECF No. 35, PageID #7256.)

As it stands, the record does not support an argument that Petitioner's current counsel, while not formally representing Mr. Hundley, nonetheless served as his agents or as agents of Mr. Hundley's State counsel.  Nor does it support Respondent's insistence that Petitioner's current counsel with the Office of the Federal Public Defender "could have filed a timely petition on [his] behalf." (*See* ECF No. 40, PageID #7322, 7324, 7325; ECF No. 41-1, PageID #7332, 7334, 7335.)  On February 22, 2022, the date that the limitations period expired, Petitioner's current counsel did not represent him.  Respondent references the provision of sample motions from an assistant Federal Public Defender to another attorney, coordination of certain tasks with Mr. Hundley's State counsel, and expressions of concern over aspects of the other attorney's case (ECF No. 40, PageID #7324; ECF No. 41-1, PageID #7334; *see also* ECF No. 30-2, PageID #7149; ECF No. 30-4), equating these actions with the creation of an agency relationship between the first attorney and the other attorney's client. But this correspondence suggests that lawyers with the Office of the Federal Public Defender advised that they could not represent Mr. Hundley at that time.  (ECF No. 30-2, PageID #7149.)  If Respondent's argument has merit, it will require factual development.

One remaining issue in Respondent's opposition regarding the opening of discovery (as opposed to its scope) remains to address.  Respondent argues that Petitioner's current counsel already have access to the files of his State counsel.

However, Respondent does not argue that those files contain evidence sufficient to evaluate the allegations that Petitioner sets forth regarding his State counsel. (Instead, Respondent bases his argument on the premise, unsupported at this stage, that counsel with the Federal Public Defender served as Mr. Hundley's counsel or as their agents in State post-conviction proceedings.)  Indeed, Petitioner argues that additional evidence and information will corroborate his claims.  That remains to be seen.

At this stage, the inquiry turns on whether discovery may substantiate allegations that entitle Petitioner to equitable tolling, and the fact that Petitioner already possesses some evidence is not dispositive.  *See Ata*, 662 F.3d at 742–43. Moreover, Respondent points to no inconsistency with the record from State court, and Petitioner's allegations are not so conclusory as to be disregarded.  *See Ata*, 662 F.3d at 743, 744 (citing *Schriro*, 550 U.S. at 474).  For these reasons, the Court **GRANTS** Petitioner's motion for development of the record related strictly to the issue of equitable tolling.

## II.  Discovery

In his motion, Petitioner identifies the discovery he seeks to develop the factual basis for his argument on equitable tolling.  (ECF No. 37, PageID#7306–07.)  By July 31, 2025, the Court directs Petitioner to serve, after complying with Rule 45 of the Federal Rules of Civil Procedure, any and all subpoenas he intends to serve on any third party and any discovery requests he intends to serve on Respondent.  The Court will set a deadline for service of interrogatories on Mr. Hundley's State counsel following their responses to the subpoenas.

14

Regarding the proposed requests for production of documents from Respondent, the Court finds that most are overbroad.  At least initially, the fifth bullet, plus any records, logs, documentation, or recordings of communications between Mr. Hundley and his State counsel, captures the salient information.  (*See id.*, PageID #7307.)

Also by July 31, 2025, Respondent shall serve any and all discovery requests directed to the issue of equitable tolling he intends to seek.

The Court **ORDERS** counsel for Petitioner to submit the files they obtained from Mr. Hundley's prior counsel for *in camera* review forthwith.  If they contend that any information relevant to their equitable tolling argument is privileged, they shall file a brief on the issue by July 31, 2025.

The Court sets a status conference in Courtroom 16B on September 10, 2025 at noon.  At the hearing, the Court will address and resolve any and all issues with or objections to discovery.  Additionally, the Court will set a deadline for service of and responses to interrogatories to Mr. Hundley's prior counsel.  No later than September 2, 2025, Petitioner shall advise the Court of any recipient of a subpoena who has an objection that needs to be resolved so that the Court can order that person to appear to address and resolve any issues or objections and ensure timely compliance.  Also, at the hearing, the Court will address any necessary follow-up discovery and set a deadline for expansion of the record under Rule 7.  The Court defers a determination whether a hearing is appropriate under Rule 8 pending its review of the record developed in discovery.

15

**SO ORDERED.**

Dated:  July 3, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio