**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LANCE HUNDLEY, | ) | CASE NO. 4:24-CV-01565-JPC |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| WARDEN WILLIAM COOL, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |
| | ) | |

I.     **Introduction**

Petitioner Lance Hundley ("Hundley") filed a Notice of Intent to File Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on September 13, 2024. (ECF Doc. 1). On that same day, he moved for appointment of the Federal Public Defender under 18 U.S.C. § 3599(a)(2), which the Court granted. (ECF Docs. 1, 2, 5). Since the filing of Hundley's Petition (ECF Doc. 19), Respondent, Warden William Cool, ("Respondent") has asserted that the Petition, is untimely on its face and is barred by AEDPA's one-year statute of limitations. (*See, e.g.*, ECF Doc. 21, pp. 2-3). Hundley asserts that equitable tolling applies in his case. (*E.g.*, ECF Doc. 20, p. 4). The District Judge held a hearing on the matter on January 16, 2025 and ordered Respondent to supplement the record with evidence relevant to the issue of equitable tolling, and further established a briefing schedule to create a sufficient record for the adjudication of the equitable tolling issue. (ECF Docs. 24, 35). The Court granted in part Hundley's motion to expand the evidentiary record and conduct discovery on the issue of equitable tolling. (ECF Doc. 44). The parties have briefed their positions on the issue of equitable tolling and are conducting discovery

1

to more fully develop the record. (*E.g.*, ECF Docs. 25, 30, 33, 37, 40, 43; *see also, e.g.*, ECF Docs. 45, 53, 55). On July 3 and July 25, 2025, the District Judge held status conferences to discuss discovery matters; as part of those conferences, Hundley was ordered to submit files from his prior counsel for *in camera* review and submit a brief regarding privilege no later than July 31, 2025. (ECF Docs. 44, 51, 52). Based on its *in camera* review, the Court indicated it would determine if any files from the Office of Federal Public Defender predating July 2024 are discoverable. (ECF Doc. 51, p. 1).

On August 5, 2025, the District Judge referred the matter to me pursuant to 28 U.S.C. § 636(b)(1)(A) and Northern District of Ohio Rule 72.2(a) for *in camera* review of materials submitted by the Federal Public Defender, and production to Respondent, as appropriate, of any materials relevant to the issue of equitable tolling. (ECF Doc. 56, pp. 1-2). The referral also contemplated a recommendation as to whether any files from the Office of the Federal Public Defender predating July 2024 are discoverable. (*Id.* at p. 2).

I have concluded my *in camera* review of the submitted materials and have identified certain materials which may be relevant. As described more fully below, I now direct the Federal Public Defender to produce the identified materials to Respondent and further provide my recommendation to the District Judge as to the discoverability of additional files.

**II.    Privilege and Waiver**

Hundley has submitted records from his prior state counsel for the Court's *in camera* review, to develop his claim of equitable tolling. The Federal Public Defender provided those records on two USB flash drives; one was marked as containing privileged materials protected by the work product doctrine. As part of that submission, Hundley also submitted a brief on the

2

issue of privilege, claiming that either attorney-client privilege or the work product doctrine applies to protect these materials from discovery. (ECF Doc. 52, pp. 2-6).

### A. Attorney-Client Privilege

The attorney-client privilege protects confidential communications between attorneys and their clients from disclosure. *United States v. Zolin*, 491 U.S. 554, 562 (1989). The "central concern" of the attorney-client privilege is "'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Zolin*, 491 U.S. at 562, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As such, "the attorney-client privilege is a necessary foundation for the adversarial system of justice." *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005).

The guidelines controlling the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964), quoting 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961). The privilege "appl[ies] to all stages of a case or proceeding" including, as here, in the discovery phase of a habeas corpus proceeding. *See* Fed. R. Evid. 1101(c); *see also In re Lott*, 424 F.3d at 452 ("There is no question that the attorney-client privilege remains applicable in habeas proceedings.") The attorney-client privilege extends to an attorney's factual investigations, and to counsel's communications with agents and experts retained by counsel for the purpose of providing legal advice. *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D. Tenn. 2014).

Nonetheless, the attorney-client privilege is not absolute. *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986). "It applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *Id.*, citing *Fisher v. United States*, 425 U.S. 391, 403 (1976). As such, courts must be mindful to limit waiver of this foundational privilege. *See In re Lott*, 424 F.3d at 451. "Courts 'must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.'" *Id.* at 453, quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003).

A client may waive the privilege by affirmative conduct implying waiver or consent to disclosure. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). Generally, the attorney-client privilege is waived by voluntary disclosure of private communications by an individual to third parties. *Id.* In habeas proceedings, waiver may also be implied by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance. *In re Lott*, 424 F.3d at 453 (collecting cases). However, implied waiver in the habeas context "is limited to situations where the petitioner has made the confidential relationship the subject of a constitutional inquiry." *Id.* at 454. But even where waiver is narrowly determined, a client may not be selective in its imposition; it is done in toto. *In re Columbia/HCA Corp.*, 293 F.3d at 294, 302-03; *see also In re Lott*, 424 F.3d at 454 ("litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. The attorney-client privilege cannot at once be used as a shield and a sword." (internal quotations and marks omitted)).

Here, Hundley has taken an affirmative step to waive attorney-client privilege by placing his state appellate and postconviction counsel's performance into question. *See generally In re Lott*, 424 F.3d at 452-54. Hundley has repeatedly asserted in his briefs before this Court that his

4

state appellate and postconviction attorneys have failed him – up to and including assertions of abandonment of counsel. (*See, e.g., generally* ECF Doc. 37; *see also* ECF Docs. 19-2, 20). In his Petition, Hundley claims he should be entitled to equitable tolling, in part due to state counsel's failure to preserve a number of constitutional claims that remain unexhausted in state court. (*See, e.g.*, ECF Doc. 19-2, pp. 6-7). He has developed this assertion of attorney abandonment throughout the pendency of the case, and expounded on state counsel's abandonment in a 51-page brief requesting evidentiary development on the issue of equitable tolling. (ECF Doc. 37). Hundley asserts, in detail, the ways in which he feels as if his state counsel's conduct rose to a level beyond "mere" ineffective assistance and, in essence, to abandonment. (*Id.* at pp. 35-38). He also asserts attorney misconduct by communicating via third-party messaging systems, including JPay. (*Id.* at p. 35). As part of this brief, Hundley also outlines requesting subpoenas for document production from his prior state appellate counsel, as well as related production of any audio recordings and electronic communications in the Warden's possession. (*Id.* at pp. 43-44).

Therefore, by placing his state appellate counsel's conduct into question, and raising related constitutional claims, Hundley has clearly made "the confidential relationship the subject of a constitutional inquiry." *In re Lott*, 424 F.3d at 454. Moreover, Hundley has sought, and the Court has granted, his ability to conduct discovery on the matter of equitable tolling. (*e.g.*, ECF Docs. 24, 44). He therefore must submit for review those documents deemed relevant to the inquiry, even those that may otherwise be protected by attorney-client privilege. "Once the privacy for the sake of which the privilege was created is gone by the client's own consent, . . . the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice." *In re Columbia/HCA Corp.*, 293 F.3d at 302-03.

5

And "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Upjohn Co.*, 449 U.S. at 390. Therefore, production of these attorney-client privileged documents is necessary for both parties to ascertain the relevant facts and develop their arguments with respect to equitable tolling.

### B.    Attorney Work Product

"[T]he work product doctrine 'is distinct from and broader than the attorney-client privilege.'" *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986), quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). It protects any document or tangible thing prepared in anticipation of litigation by or for the attorney or their representative. *In re Antitrust Grand Jury*, 805 F.2d at 163; *see also In re Pros. Direct Ins. Co.,* 578 F.3d 432, 438 (6th Cir. 2009). Generally speaking, Federal Civil Rule 26(b) permits, upon a showing of "substantial need," the production of discoverable materials prepared in anticipation for litigation. Fed. R. Civ. P. 26(b)(3)(A). However, the Rule also protects against the disclosure of the attorney's "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(B)(3)(B).

Nonetheless, where a client has elected to interject counsel's conduct into the proceedings and has waived attorney-client privilege, the client also waives work product privilege. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 474 (6th Cir. 2006); *see also In re Columbia/HCA Corp.*, 293 F.3d at 306 ("there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege"). Therefore, even if the work product doctrine applies to the materials here, because Hundley has already waived his attorney-client privilege as to state appellate counsel's conduct, he has likewise waived work product privilege and the materials asserted would still be subject to production if deemed relevant after my *in camera* review.

I therefore determine that Hundley has affirmatively waived attorney-client privilege and work product privilege with respect to communications or lack thereof with his state counsel, and proceed to my *in camera* review for production of those documents deemed relevant to the question of equitable tolling.

**III.     Relevance of Documents**

"The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Upjohn Co.*, 449 U.S. at 390, citing to ABA Code of Professional Responsibility, Ethical Consideration 4–1. But not all of counsel's materials are necessarily free from the reaches of discovery in all cases. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Discovery of otherwise privileged material may be had where relevant information is hidden in an attorney's file and production of those facts is essential to the preparation of the case. *Id.*

Habeas Rule 6 of the Rules Governing Section 2254 Cases allows for discovery, as available under the Federal Civil Rules, for good cause. Habeas Rule 6(a). "Good cause" for discovery exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09. "The burden of demonstrating the materiality of the information requested is on the moving party." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). The Court has previously granted Hundley's request for discovery to develop facts supporting his claim for equitable tolling. I therefore turn to the Federal Rules of Civil Procedure to determine the relevance of the files provided for the Court's *in camera* review.

Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

7

      the importance of the issues at stake in the action . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable.

However, the Court must limit the extent of discovery if it determines that the proposed discovery is outside the scope permitted under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii).

      Having determined that privilege is waived, and mindful of relevance, proportionality, and the importance of the issues at stake in his case, I have determined that a portion of the files provided for *in camera* review are relevant and must be produced to Respondent.

      **A.**      **Production of Files from Hundley's Prior State Counsel**

      Hundley has provided the Court two USB drives containing files obtained from his prior state appellate counsel. One USB drive contains five folders; three are numbered and designated as from attorney Cartwright-Jones; two continue the numbering system and are marked as from attorney Lazcko. A second USB drive also contains five folders, designated as "From" the folders numbered on the previous USB drive. Hundley has asserted work product privilege over the second USB drive. (ECF Doc. 52, pp. 5-6, asserting 15 points of work product privilege over the documents).

      None of the documents contained in the second USB drive are relevant to the issue of equitable tolling. Hundley asserts equitable tolling with respect to his state appellate counsel's handling of his state postconviction appeal, and the timeliness of its filing. As Hundley asserts in his brief on privilege, and as my review confirms, the files contained in this USB drive pertain to counsel's notes and communications regarding trial issues, counsel's review of trial materials, and discussions regarding his direct appeal efforts.[1] They are not relevant and do not advance the

---

[1] For completeness, Hundley notes that there is a handwritten note from Lazcko from September 2021 indicating an intention to fax a post-conviction petition. However, this note does not speak to the question of counsel's failure to timely file his state postconviction petition because it is well past the December 5, 2019 date for timely filing; nor does it speak to whether counsel

8

parties' claims or defenses with respect to equitable tolling based on Hundley's state postconviction filings made by either state appellate counsel or communications with the Federal Public Defender.

Likewise, most of the files contained in the first USB drive are not relevant to the question of equitable tolling. The folders marked, respectively, as BOX 1-3 Cartwright-Jones, appear to predate the period at issue for the timely filing of Hundley's postconviction petition. The documents pertain to trial court records, jury information, and public docket entries. The folder marked BOX 5 Lazcko likewise does not contain relevant information; it contains only information regarding Hundley's state court trial and some case research. None of these pertain to Hundley's postconviction petition or counsel's understanding regarding the timeliness or equitable tolling thereof. They are not relevant and are not required for production.

However, the folder marked BOX 4 Lazcko on the first USB drive does contain information relevant to Hundley's state postconviction petition and the timeliness thereof. These documents may serve to develop factual evidence in support of the parties' theories regarding state postconviction counsel's actions and the postconviction appeal's effect on the timeliness of his present habeas petition. In all, this folder contains material relevant to the development of the parties' claims and defenses regarding equitable tolling of Hundley's federal habeas petition.

I therefore order, pursuant to the August 5 referral (ECF Doc. 56) that the Federal Public Defender produce the folder marked BOX 4 Lazcko from the first USB drive to Respondent, in a secure format, as soon as is practicable.

---

believed the state trial court had equitably tolled his postconviction petition for purposes of AEDPA statutory tolling. I therefore determine that this note is not relevant to the question of equitable tolling as presented here.

### B. Discoverability of Files from the Federal Public Defender Predating July 2024

Relevant, discoverable information regarding state appellate counsel's conduct may also be available in the Office of the Federal Public Defender's records. Although the Federal Public Defender was not appointed until September 2024, Respondent has asserted an agency relationship occurred when the Office of the Federal Public Defender communicated with Hundley's state appellate counsel prior to the conclusion of his direct appeal and during the untimely filing of his state postconviction appeal. (*e.g.*, ECF Doc. 40, p. 5). As such, Respondent states that the Federal Public Defenders "consult[ed] with and assist[ed] state postconviction counsel" to a level that they "acted as Hundley's agents." (*Id.*). With an alleged agency relationship in place between the Office of the Federal Public Defenders and Hundley, Respondent believes that Hundley should bear the risk of any mistakes on the Federal Public Defenders' part, including barring any equitable tolling of his late-filed federal habeas petition. (*Id.*). Hundley rejects the assertion that an attorney-client agency relationship formed between himself and the Office of the Federal Public Defenders at any point prior to their appointment for purposes of his federal habeas petition. (ECF Doc. 43, pp. 1-2). He asserts their conduct prior to appointment does not have a bearing on whether equitable tolling should apply to his petition. (*Id.*).

As discussed above, attorney-client privilege and the work-product doctrine may act to protect either documents or communications made between an attorney and experts retained, in preparation of a client's case. *See In re Pros. Direct Ins. Co.*, 578 F.3d at 438; *see also Genesco, Inc.* 302 F.R.D. at 190. Because Hundley has waived privilege with respect to his state appellate counsel, any communications that state appellate counsel may have had with the Federal Public Defender prior to appointment are also waived under this premise.

10

To be clear, I find only that Hundley has waived privilege with respect to his prior state appellate counsel, and cannot thereby protect any communications his state appellate counsel may have had with the Office of the Federal Public Defender when seeking advice in preparing Hundley's state postconviction case. A similar waiver of privilege would apply for any relevant communications between state appellate counsel and advice sought from other parties. Unequivocally, however, Hundley has not waived privilege with respect to his current representation by the Federal Public Defender. (ECF Doc. 43, p. 3). He asserts privilege with respect to the attorney-client relationship between himself and the Federal Public Defender for purposes of his federal habeas petition. (*Id.*). I agree that since July 2024, Hundley personally has availed himself of the Federal Public Defender's services, and privilege now protects Hundley's current case file, communications with his counsel, their work product, and relevant investigatory materials.

Limited as described above, any materials that the Office of the Federal Public Defender may have from prior to July 2024 may be relevant to the inquiry as to whether an agency relationship existed, and, by extension, are relevant to the question of whether equitable tolling is unavailable to Hundley as a result of the Federal Public Defender's conduct prior to appointment.

I therefore recommend to the District Court that the files that the Office of the Federal Public Defender may have between itself and Hundley's state appellate counsel from prior to July 2024 are discoverable under Hundley's waiver of privilege between himself and his state appellate attorneys. I recommend the District Court require the Office of the Federal Public Defender submit any available documents not already produced[2] to the Court for *in camera*

---

[2] The Office of the Federal Public Defender has previously submitted correspondence emails between itself and state appellate counsel, under seal. (ECF Docs. 27, 29, 30 and attachments). It need not re-produce these materials.

11

review as soon as is practicable. Hundley has not waived privilege between himself and the Office of the Federal Public Defender, and any files with respect to their current representation remain protected.

### IV. Conclusion

I determine that Hundley has waived privilege as to the documents provided for the Court's *in camera* review. Having conducted that review, I direct the Office of the Federal Public Defender to produce, as soon as is practicable, the materials found on the first USB drive in the folder marked "BOX 4 Lazcko". Materials from the USB drive designated as covered by the work product doctrine are not relevant and not subject to production. I further recommend to the District Court that those files as between the Office of the Federal Public Defender and Hundley's state appellate counsel predating July 2024 are discoverable, but any documents designated as relating to their current representation remain privileged.

The above directive for production by the Federal Public Defender is limited to the two USB drives provided for the Court's *in camera* review as contemplated in the District Judge's August 5, 2025 referral. (ECF Doc. 56). Nonetheless, I note that discovery on the matter is ongoing and subpoenas have been issued, including to obtain records maintained by the Ohio Department of Rehabilitation and Correction. (*See, e.g.*, ECF Docs. 53, 55). I remain available should the Court determine further *in camera* review is necessary as discovery progresses.

Dated: August 19, 2025

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

_____

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).